**Cathy M. MANCINE, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 20, 2008.

Decided April 15, 2008.

Nicole Scialabba, Pittsburgh, for petitioner.

Judith M. Gilroy, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Cathy M. Mancine (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review that adopted a referee's recommended decision to deny her claim for unemployment compensation benefits following her discharge from her position as a full-time Health Unit Coordinator by the University of Pittsburgh Medical Center's St. Margaret Hospital (Employer) for a violation of its theft policy for using drink coupons employer provided for the use of patients and their families.[1] The Employer viewed her use of the coupons as theft based on the theory that her use of the coupons to receive free beverages at the Employer's cafeteria resulted in the loss of revenue to the Employer.

We will begin by noting that the Employer's disciplinary policy generally requires the Employer to engage in corrective measures when an employee's conduct violates one of its policies. However, the corrective action and discharge procedures also provide that "[d]epending on circumstances, the following events are usually considered cause for **immediate** discharge ... dishonesty ... theft." (Emphasis added.) The Employer's discharge letter

---

1. The record indicates that the Employer includes a coupon in each informational packet provided to incoming patients.

to Claimant clearly indicates that the Employer viewed Claimant's conduct in using the coupons as theft.

The questions Claimant raises before this Court are: (1) Whether substantial evidence supports the Board's necessary factual findings that Claimant's conduct constitutes theft; (2) Whether the evidence and testimony actually support a finding that Claimant improperly accepted gratuities from patients such as would have required the Employer to engage in corrective actions before discharging Claimant; and (3) Whether Claimant's actions constitute willful misconduct.

We begin by noting that, although the Employer's witness at the hearing expressed doubt that Claimant could have obtained from patients all of the coupons she used,[2] thus implying that Claimant obtained the coupons through some type of deceitful conduct, the Employer specifically stated that the theft it alleged to have occurred resulted not from the manner in which Claimant obtained the coupons, but rather from her use of the coupons to acquire beverages for which she would otherwise have had to pay. We also note that the Board made no factual findings regarding the source of the coupons Claimant used. Therefore, there are insufficient facts from which the Court could resolve the second issue noted above, i.e., whether the evidence could support a finding that Claimant received the coupons as a gratuity.[3]

Accordingly, we are limited in our review now to the question of whether Claimant's use of the coupons constituted a violation of the Employer's theft policy such as would constitute willful misconduct.

The definitions of the word "theft" include "any act or instance of stealing." Black's Law Dictionary, 1486 (7th ed. 1999). The expression "to steal" can been defined as the taking of "(personal property) illegally with the intent to keep it unlawfully." Black's Law Dictionary, 1424 (7th ed. 1999). In this particular case, although the Board did not identify the precise property that the Employer asserted Claimant stole, the Employer essentially is claiming that Claimant was not authorized to use the coupons and therefore her acquisition of the beverages constitutes theft.

The Board points to this Court's decision in *Gibson v. Unemployment Compensation Board of Review*, 760 A.2d 492 (Pa. Cmwlth.2000) as being factually similar to this case. In *Gibson*, an employee had removed a floppy disc drive from a desktop computer that had been placed on a trash truck on the employer's premises. The Court affirmed the Board's denial of benefits based upon the evidence in the record establishing that the employer had a written policy prohibiting the removal of company property, including scrap and trash. We cannot agree with the Board that *Gibson* provides support for the Employer's discharge of Claimant, because the Employer in this case, unlike that in *Gibson*, has no specific policy prohibiting the use by employees of the coupons provided to patients. The record includes (1) testimony from the Employer's witnesses that the coupons were intended for the

---

**2.** The Board made no findings regarding the actual number of coupons Claimant used, but the record appears to indicate that she used approximately seven over the course of a two-week period. Claimant testified that the value of the seven beverages was approximately $8.00.

**3.** Claimant does not contend that the Board erred by failing to make certain factual findings.

benefit of patients and their families, and (2) a copy of the coupon, which nowhere indicates that the coupons are not transferable.

However, the Board is correct in noting that our Supreme Court in *Temple University v. Unemployment Compensation Board of Review*, 565 Pa. 178, 772 A.2d 416 (2001), held that an employee's erroneous belief that she has a legal entitlement to property of an employer does not excuse an employee's violation of an employer's rules. *Temple* involved a case in which a hospital employee received pay for hours he did not work. The employee's supervisor had told the employee that he should be rewarded for good work performance and that he should add hours to his timesheets in order to receive additional pay. The Court reiterated the principle that "there can be no good cause for stealing from an employer" that would excuse such willful misconduct. 565 Pa. at 183, 772 A.2d at 418. In *Temple*, the particular policy the Court concluded the employee had violated stated that "the stealing or deliberate destruction of University property or the property other employees, patients, clients, students or visitors would result in termination." 565 Pa. at 181, 772 A.2d at 417. Thus, unlike *Gibson*, the particular employer rule in *Temple* simply prohibited stealing. In this case, the Employer has pointed to no specific rule prohibiting the use of patient coupons by employees; however, as in *Temple*, the Employer has a rule prohibiting theft and making such conduct cause for immediate termination. Accordingly, we must consider whether Claimant's use of the coupons constitutes theft.

In *Temple*, the Court resolved the issue by first considering whether that claimant lacked "legal entitlement" to the pay. In this case we must ask whether this Claimant had such entitlement. If not, as the Court stated in *Temple*, her lack of knowledge would have no bearing on the theft issue, i.e., lack of knowledge of wrongdoing would not constitute good cause for engaging in the conduct. In accord with *Temple*, as part of its burden to show that a claimant has engaged in willful misconduct by violating a rule against theft, an employer has the burden to establish that a claimant did not have legal entitlement to the subject property, which in this case is the beverages she acquired with the coupons. While it is clear in the *Temple* case that the employee had no legal entitlement to payment for hours he did not work, this case presents a more troubling question where an employee, who we must for this purpose believe did not steal the coupons, used them to obtain property for which she would otherwise have had to pay.

Because the coupons on their face contain no prohibition or limitation on the user of or transferability of the coupons, we believe the question boils down to whether the testimony of Employer's witness that the coupons were intended by the employer to be used only by patients or their families is sufficient to establish that Claimant had no legal entitlement to use the coupons. In this case, the Employer has provided no testimony that it informed employees that they could not use the coupons or that it intended the coupons to be used only by patients or their families. We believe that the testimony of the Employer's witness that it intended only patients or their families to use the coupons is insufficient to support a conclusion that Claimant had no legal entitlement to use the coupons. In this case, although the Board made no findings regarding the alleged transference of the coupons from a patient to Claimant, the Employer has not offered support for the legal proposition that, once it gave the coupons to patients, the patients had no legal authority to transfer the coupons to a

non-family member or to a hospital employee. If the patients had the authority to transfer the coupons—the coupons do not indicate that patients can't transfer them—then the Court cannot agree that the use of the coupons upon a valid transfer by a patient would not constitute legal entitlement.

Even though the act of receiving the coupons and the act of using the coupon could constitute two distinct violations, based upon the foregoing, we cannot agree with the Board's conclusion that Claimant engaged in willful misconduct, because we do not believe that the Employer satisfied its burden of proving that Claimant had no legal entitlement to use the coupons. Although Claimant's receipt of the coupon could have constituted a violation of the Employer's rule prohibiting an employee's acceptance of a gratuity or gift, that rule violation is not at issue here. Accordingly, we will reverse the Board's decision.

## ORDER

AND NOW, this 15th day of April 2008, the order of the Unemployment Compensation Board of Review is reversed.