**Gbenga A. OYETAYO, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 3, 2014.

Decided March 4, 2015.

1118

Daniel G. Anna, Media, for petitioner.

Sharon W. Glogowski, Norristown, for intervenor County of Montgomery.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Gbenga A. Oyetayo (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board), in which the Board affirmed the determination made by a Referee that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law) because he was discharged from his employment in the Montgomery County (Employer) Department of Behavioral Health and Developmental Disabilities (Department) for willful misconduct. For the reasons that follow, we affirm.

Claimant filed his initial claim for unemployment compensation benefits on July 3, 2013. (Record Item (R. Item) 2, Internet Initial Claim.) On July 24, 2013, the Unemployment Compensation Service Center issued a determination finding Claimant eligible for benefits of the Law because Employer had not provided information to substantiate that Claimant had violated its rules. (R. Item 5, Notice of Determination.) Employer appealed the determination and a hearing was held before the Referee on September 30, 2013 at which Claimant testified. Additionally, two witnesses testified for Employer at the hearing: the Department's Administrative Officer and the Department's Fiscal Director. In a November 19, 2013 decision and or-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to willful misconduct connected to his or her work.

der, the Referee reversed the Service Center's determination and held that Claimant was ineligible for unemployment compensation under Section 402(e), making the following findings of fact:

1. For the purpose of this appeal, [C]laimant was last employed with [Employer] as a staffing accountant from August 27, 2007 until July 1, 2013.

2. [E]mployer has a policy addressing, "Acceptable Use of Electronic Resources". The policy defines "acceptable use" of [Employer]'s computers, networks, electronic mail services, and electronic resources. Employees may not use the resources of their office or equipment in aid of or to conduct political or personal activities. Such penalties for policy infractions may include loss of system access and termination of employment. No employee shall misuse personal services and company property. Personal usage of [Employer] materials and equipment are intended to be utilized for official purposes. Personal usage is allowed only if *"de minimus"* [sic] in nature and reasonable under the totality of circumstances.

3. [C]laimant was aware of [E]mployer's company policy.

4. [C]laimant was scheduled to work the hours of 8:00 AM to 4:30 PM, with a lunch break from 1:00 PM to 2:00 PM and two fifteen (15) minute breaks.

5. On February 1, 2013, [C]laimant was presented with a Progressive Discipline Report and provided with a written warning for his excessive personal phone calls while on company time and use of [Employer] office equipment for personal needs.

6. On April 29, 2013, [C]laimant sent a personal e-mail to his wife at 9:21 AM.

7. On May 20, 2013, [C]laimant sent a number of personal e-mails beginning at 10:01 AM to 10:09 AM; [Claimant] also sent a personal e-mail at 4:20 PM.

8. On May 20, 2013, [C]laimant sent a non-work related email at 10:08 AM to [Employer's] Chief Operating Officer of the company in error.

9. [Employer's] Chief Operating Officer reported the receipt of the claimant's e-mail to [E]mployer.

10. On May 23, 2013, the Administrative Officer of [the Department] interviewed the claimant.

11. [C]laimant denied sending this e-mail to [Employer's] Chief Operating Officer, and does not know whom the person was that sent the e-mail, although it was sent from his computer.

12. The Administrative Officer requested to have the [Employer's] IT Department check the [C]laimant's e-mails [ ] on May 20, 2013 and the day before to determine whether the e-mail sent on May 20, 2013 was part of another e-mail.

13. The Administrative Officer was provided with a series of e-mails sent [by Claimant] to his wife [and] e-mails [C]laimant's wife sent to him at work.

14. [E]mployer began to determine the disciplinary action [C]laimant is subject to receive for his violation of [Employer's] policy for his misuse of company time and personal use of the [Employer] computer.

15. On May 31, 2013, [C]laimant took off work for a short period of time for military leave.

16. On July 1, 2013, [Employer's Administrative Officer] met with [C]laimant.

17. [C]laimant was presented with a formal letter of termination for his continued misuse of [Employer] equipment and spending excessive work time with non-work related communications.

(R. Item 14, Referee Opinion and Order, Findings of Fact (F.F.) ¶¶ 1–17 (emphasis in original).)

Claimant appealed to the Board, and, on February 11, 2014, the Board issued an opinion and order affirming the Referee's decision and order. In its opinion and order, the Board adopted and incorporated the Referee's findings of fact and conclusions and stated:

> Additionally, [E]mployer's witnesses offered credible testimony and evidence indicating that [the] February 1, 2013 written warning [issued to Claimant], along with his prior written warning on May 26, 2011, put [C]laimant on notice that [E]mployer would not tolerate unauthorized use of the Internet or performing of any non-[Employer] business during work hours. Considering these prior warnings, [E]mployer reasonably determined that [C]laimant's personal e-mails on April 29, 2013, and May 20, 2013, were excessive and unacceptable.

(R. Item 16, Board Opinion and Order.) The Board accordingly affirmed the determination by the Referee denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Law. Claimant thereafter petitioned this Court for review of the Board's decision and order.[2]

■ In unemployment cases, the initial burden of proving willful misconduct lies with the Employer. *Navickas v. Unemployment Compensation Board of Review,* 567 Pa. 298, 787 A.2d 284, 288 (2001); *Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 550 Pa. 115, 703 A.2d 452, 456 (1997). Though not defined in the Law, willful misconduct has been interpreted to include: (i) wanton and willful disregard of the employer's interests; (ii) a deliberate violation of the employer's rules; (iii) a disregard of the standards of behavior that the employer rightfully can expect from its employees; and (iv) negligence that manifests culpability, wrongful intent or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations. *Temple University v. Unemployment Compensation Board of Review,* 565 Pa. 178, 772 A.2d 416, 418 (2001); *Caterpillar,* 703 A.2d at 456.

■ Where a violation of the employer's work rule is alleged to be the basis for termination of employment, the employer must show that the rule existed, that the rule was reasonable and that the claimant was aware of the rule and violated it. *Williams v. Unemployment Compensation Board of Review,* 926 A.2d 568, 571 (Pa. Cmwlth.2007). If the employer makes that showing, the burden shifts to the claimant to show good cause for his conduct. *Henderson v. Unemployment Compensation Board of Review,* 77 A.3d 699, 719 (Pa.Cmwlth.2013); *ATM Corp. of America v. Unemployment Compensation Board of Review,* 892 A.2d 859, 865 (Pa. Cmwlth.2006).

■ The Board is the ultimate finder of fact and is empowered to make credibility determinations. *Doyle v. Unemployment Compensation Board of Review,* 58 A.3d 1288, 1291 n. 4 (Pa.Cmwlth.2013). In making credibility determinations, the Board may accept or reject the testimony of any witness in whole or in part. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383, 1388

---

2. Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Temple University v. Unemployment Compensation Board of Review,* 565 Pa. 178, 772 A.2d 416, 418 n. 1 (2001).

(1985); Doyle, 58 A.3d at 1291 n. 4. When the Board's findings of fact are supported by substantial evidence, that is such evidence a reasonable mind might accept as adequate to support a conclusion, those findings are conclusive on appeal. Henderson, 77 A.3d at 718; Bruce v. Unemployment Compensation Board of Review, 2 A.3d 667, 671 (Pa.Cmwlth.2010). However, whether a claimant's actions constitute willful misconduct is a question of law that is fully reviewable by this Court on appeal. Temple University, 772 A.2d at 418 n. 1; Caterpillar, 703 A.2d at 456.

 On appeal, Claimant argues that the Board's finding that Claimant violated Employer's policy concerning the acceptable use of electronic resources was not supported by substantial evidence. Claimant argues that the personal emails to his wife on April 29, 2013 and May 20, 2013 did not take place over periods longer than 15 minutes and thus were not on company time but instead fell within the authorized 15 minute morning and afternoon break periods in Claimant's schedule. Claimant further argues that his conduct did not constitute willful misconduct because the limited use of his work computer for personal email was reasonable and fell short of the type of conduct required under the Law to disqualify a claimant from receiving unemployment compensation benefits. Claimant contends that the Board's findings of only two instances of personal email use on April 29, 2013 and May 20, 2013 during the four-month period between his last written warning on February 1, 2013 and his last work day on May 31, 2013 constitute such an insignificant amount of personal email use to fall within any reasonable interpretation of the de minimis exception built into Employer's use of electronic resources policy. Claimant also argues that the de minimis exception was vague and did not provide

Claimant with sufficient notice of what constituted a violation of that rule.

We conclude that there is substantial evidence in the record to support the Board's findings that Employer maintained a policy limiting the personal use of Employer electronic resources, that Employer warned Claimant on multiple occasions that he was no longer permitted to use Employer equipment to conduct his personal affairs and that Claimant did use work equipment for non-work reasons despite these warnings. Employer's employee handbook, which was submitted as evidence at the hearing, included a policy entitled "Acceptable Use of Electronic Resources," which "define[d] the boundaries of 'acceptable use' of [Employer]'s computers, networks, electronic mail services, and electronic information systems." (R. Item 13, Employer Ex. 1, Supplemental Reproduced Record (S.R.R.) at 61b.) This policy stated that:

> This policy is based on the principle that the electronic information environment is provided to support [Employer] business and its mission. Other uses are secondary.... Employees may not use the resources of their office or employment in aid of or to conduct political or personal activities ...

> By using [Employer] electronic resources you assume personal responsibility for their appropriate use and agree to comply with this policy and other applicable [Employer] policies ...

(Id.) A separate portion of the employee handbook related to the "Misuse of Personal Services and [Employer] Property" provided that:

> [Employer] materials and equipment are intended to be utilized for official [Employer] purposes. Personal usage is allowed only if "de minimus" [sic] in nature and reasonable under the totality of the circumstances, as determined by the

Commissioners, the Chief Operating Officer, or the County Solicitor. (*Id.*, S.R.R. at 73b.) Employer also submitted as evidence a 2012 signed acknowledgement by Claimant of his receipt of the Employee Handbook and being bound by the policies contained therein. (*Id.*, S.R.R. at 79b.)

On May 26, 2011, the Department's Fiscal Director issued Claimant a written warning for violating Employer policy following an incident in which Claimant used a work scanner to scan personal financial documents. (R. Item 13, Employer Ex. 6, S.R.R. at 111b; R. Item 13, Hearing Transcript (H.T.) at 22–23, S.R.R. at 23b–24b.) The warning stated:

> This is a written warning and further clarification of the verbal directive given to you previously. *All [Employer]/office equipment is to be used for work purposes only.* This includes your computer, the copiers, the scanner, etc... Any further incidents of this nature will result in further disciplinary action up to and including unpaid suspension and or termination.

(R. Item 13, Employer Ex. 6 (emphasis in original), S.R.R. at 111b.) The Fiscal Director again issued a written warning to Claimant regarding the proper use of Employer's resources on February 1, 2013, related to Claimant's non-work related use of the office scanner and his "frequent, loud and long" personal phone conversations that were "disrupting the work environment for others." (R. Item 13, Employer Ex. 6, S.R.R. at 116b; R. Item 13, H.T. at 21–22, S.R.R. at 22b–23b.) The February 1, 2013 warning provided for a "Performance Improvement Plan" that called for "[g]reatly reduced personal phone calls" and "[n]o use of [Employer] office equipment for personal needs." (R. Item 13, Employer Ex. 6, S.R.R. at 116b.) Claimant acknowledged at the hearing that

he had received these disciplinary actions and was aware that he could be terminated for continued personal use of Employer's resources. (R. Item 13, H.T. at 29, 33, S.R.R. at 30b, 34b.)

Employer also presented evidence regarding a written warning issued to Claimant on March 17, 2008 regarding Claimant's "[a]buse of [t]ime," including Claimant's "[u]nauthorized use of the internet and conducting [non-Employer] business during working hours." (R. Item 13, Employer Ex. 6, S.R.R. at 121b–122b; R. Item 13, H.T. at 25, S.R.R. at 26b.) This warning advised Claimant that while he was permitted to conduct non-business matters during his breaks, "[c]ontinued abuse of this privilege will result in a zero tolerance policy of [non-Employer] business in this office." (R. Item 13, Employer Ex. 6, S.R.R. at 122b.) The Fiscal Director also testified that he had personally spoken to Claimant regarding his use of work time for personal affairs "[p]retty much ... during his entire time of employment, in levels from just friendly reminders, requests, up to the three writings." (R. Item 13, H.T. at 26, S.R.R. at 27b.)

The record also demonstrates that Claimant sent personal emails from his work computer to his wife on April 29, 2013 and May 20, 2013 and that on May 20, 2013 he also accidentally sent a non-work related email to Employer's Chief Operating Officer at a nearly identical time and with an identical subject line as emails sent by Claimant to his wife. (R. Item 13, Employer Ex. 5, S.R.R. at 86b, 100b–101b, 103b–105b, 107b.) During his testimony, Claimant admitted to sending the personal emails to his wife and he explained that he sent brief emails to her to reduce the time of their telephone conversations; the only email that Claimant did not admit to sending was the email received by the Chief

Operating Officer, the origin of which he could not explain even though it was sent from his email address. (R. Item 13, H.T. at 29–34, S.R.R. at 30b–35b.) In addition to the emails specifically cited by the Referee and the Board, the record contains numerous other emails from April and May of 2013 that were clearly personal in nature, as well as various emails that relate to a non-work related travel agency business that was operated by Claimant. (R. Item 13, Employer Ex. 5, S.R.R. at 83b–99b, 101b.) Accordingly, because the findings that Claimant engaged in the personal use of Employer's electronic resources in violation of Employer's work rules are supported by substantial evidence, these findings are conclusive on appeal.

 The Board's determination that Claimant's conduct constituted willful misconduct under the Law was also well founded. Here, Employer warned Claimant that using his work equipment for personal reasons could lead to further discipline or termination and Claimant persisted in doing so despite these admonitions. While Claimant is correct that Employer's policy related to the use of electronic resources permitted employees to engage in *de minimis* and reasonable personal use and during lunch and break periods,[3] the Board found that Claimant was "put . . . on notice" through written warnings of February 1, 2013 and May 26, 2011 "that [E]mployer would not tolerate unauthorized use of the Internet or performing of any non-[Employer] business during work hours." (R. Item 16, Board Opinion and Order, S.R.R. at 126b.) Thus, while an employee at Employer would normally be permitted to engage in the occasional use of his work computer for personal email, Claimant was not a normal employee; instead the Board found that Claimant had been issued written warnings that directed him not to engage in *any* unauthorized use of Employer's resources for personal reasons. Claimant's argument that his personal email use fell within the *de minimis* exception therefore fails because Employer had advised Claimant that his prior personal use of Employer's resources had exceeded what was allowed and any future use would be seen as a violation of Employer's rules.

 There is no question that Claimant's conduct was not merely negligent but rather of an intentional and deliberate nature. *Grieb v. Unemployment Compensation Board of Review*, 573 Pa. 594, 827 A.2d 422, 426 (2003). Moreover, this Court has on numerous occasions determined that a claimant's use of work time to engage in personal affairs without authorization was willful misconduct even where not prohibited by a specific work rule because it was contrary to reasonable standards of behavior that an employer can expect from its employees. *See, e.g., Pettyjohn v. Unemployment Compensation Board of Review*, 863 A.2d 162, 165 (Pa. Cmwlth.2004) (holding that access of internet for personal reasons during working hours after being advised not to constituted willful misconduct); *Baldauf v. Unemployment Compensation Board of Review*, 854 A.2d 689, 692 (Pa.Cmwlth.2004) (holding that the claimant engaged in willful misconduct by accessing personal email and non-work related websites while being paid to work); *Wetzel v. Unemployment Compensation Board of Review*, 29 Pa. Cmwlth. 195, 370 A.2d 415, 417 (1977) (holding that the claimant, whose employ-

---

**3.** R. Item 13, Hearing Transcript at 13 ("[Referee:] Is an individual allowed to send any personal e-mail during a scheduled break or lunch period? [Administrative Officer:] Yes.").

ment was terminated for crocheting at work despite several warnings not to do so, had engaged in willful misconduct). Furthermore, "[a] conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in ... cases where ... the employee has been warned and/or reprimanded for prior similar conduct." *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1163 (Pa.Cmwlth.2013) (quoting *Department of Transportation v. Unemployment Compensation Board of Review*, 84 Pa.Cmwlth. 364, 479 A.2d 57, 58 (1984)). Accordingly, because Claimant knowingly violated Employer's work rule and because Claimant has not put forward any argument that he had good cause for violating the work rule, we hold that the Board did not err in concluding that Claimant was ineligible for benefits due to willful misconduct.

 Claimant's final argument is that the Board acted inappropriately by failing to provide him with a copy of the certified record of the proceedings before the Board that was transmitted to this Court for this appeal. However, Claimant cites no authority which imposes an affirmative duty on the Board to send a claimant a copy of the record at the same time as it is sent to this Court. Instead, the applicable Board regulations provide that "[i]n the event of an appeal from the decision of the Board to the Commonwealth Court, a party may *request* a transcribed copy of the record of the testimony, and it shall be furnished without charge." 34 Pa.Code § 101.71 (emphasis added). The Board's regulations further provide that:

> When an interested party or his representative *requests* information from the file of the Board in order to present and maintain the issues ... in an appeal to the Court, such information (including the hearing transcript, where the record has been transcribed) shall be made available at a reasonable time to the party and his representative, without charge, ... for examination, copying and making notations therefrom.

34 Pa.Code § 101.54(b) (emphasis added). As there is no allegation that either Claimant or his attorney requested a copy of the record from the Board and the Board denied such a request, the Board did not act inappropriately or deny Claimant his due process rights by failing to send Claimant a copy of the certified record.

The order of the Board is affirmed.

### *ORDER*

AND NOW, this 4th day of March, 2015, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.