IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philip J. Saurman,           :
         Petitioner        :
                                   :
         v.                   : No. 2025 C.D. 2016
                                   : Submitted: April 28, 2017
Unemployment Compensation    :
Board of Review,                :
         Respondent      :

BEFORE:     HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                  FILED: May 24, 2017

        Philip J. Saurman (Claimant) petitions *pro se* for review of an order of the Unemployment Compensation Board of Review (Board) affirming an Unemployment Compensation Referee (Referee) decision that he was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because his termination was due to willful misconduct. We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) provides, in pertinent part:

> An employe shall be ineligible for compensation for any week—

> * * *

**(Footnote continued on next page…)**

Claimant was employed full-time from November 5, 2010, through April 5, 2016, by Shoprite of Warminster (Employer) as a manager when he was discharged. His last actual day of work was on March 30, 2016.

In May 2016, Claimant filed an application for benefits with the Duquesne UC Service Center (Service Center). In a Request for Separation and a Wage Information and UC Questionnaire, Employer stated that Claimant quit for personal reasons. In his Questionnaire, Claimant countered that he was discharged because he took a leave of absence to receive substance abuse treatment. He explained:

> I was admitted to Eagleville Hospital for over 4 weeks. My work didn't know how long I would be out [and] they filled my position. When I was finally discharged from [the] hospital my position was unavailable so I was laid off. I did not quit!

(Record (R) Item No. 4, Claimant Separation Information.)

In a follow-up telephone call placed by the Service Center, Claimant explained that on the night of March 30, 2016, he called and talked to Jeanie

---

**(continued…)**

> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act. . . .

43 P.S. § 802(e).

Costello (Costello), a Human Resources representative for Employer, and "Jack, the manager on duty when I called the night before, I do not know his last name," informing each that he was being admitted to a hospital but could not provide them with a release date. (Record of Oral Interview – Claimant, dated 6/14/2016.) He stated that after a couple of weeks, he called Costello from the hospital to inform her that he was still there and that he would let her know when he found out his release date. On May 10, 2016, Claimant informed Costello that his release date was tentatively May 16, 2016. However, after he was released, Claimant was informed that he was discharged "because they did not know how long I was going to be in the hospital for, they filled the position." *Id*.

Determining that Claimant met his burden of showing that he informed Employer that he had to take a leave of absence for drug treatment and that Employer did not offer alternate work, the Service Center concluded that Claimant was not ineligible for benefits under Section 402(b) of the Law[2] because he had a necessitous and compelling reason for leaving his job. Employer appealed.

Despite being duly notified of the date, time and place of the scheduled hearing before the Referee, Claimant did not appear.[3] Employer did

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week ... (b) [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . ."

[3] 34 Pa. Code § 101.51 provides:

**(Footnote continued on next page…)**

3

appear and offered into the record a letter dated August 17, 2016, from Julio M. Algarin, the Warden of the Montgomery County Correctional Facility, providing that "Our records show that he was incarcerated on [March 24, 2016] to [March 24, 2016] and again on [March 30, 2016] to [April 15, 2016]." (R. Item No. 10, Referee's Hearing: Transcript of Testimony w/ Employer Exhibit, Dated 8/18/2016.)

Employer also offered the testimony of Jack Friedrich (Friedrich), a security guard for Employer, who testified that Claimant was discharged from his employment on April 5, 2016, because he failed to notify Employer as required by Employer's written policy that he would not appear for his scheduled shifts. He explained:

> [Claimant] called on [March] 30th said he had something to do something for his court case [the next day, March 31st] . . . [a]nd he said he'd be at work on the 1st. And he was a no call/no show. We attempted to reach him. I did further research and found out that he was incarcerated in Montgomery County prison. . . . He did not call until later on after . . . he was terminated [on April 5th], way beyond that time.

\* \* \*

---

**(continued…)**

> If a party notified of the date, hour and place of a hearing fails to attend a hearing without proper cause, the hearing may be held in his absence. In the absence of all parties, the decision may be based upon the pertinent available records. The tribunal may take such other action as may be deemed appropriate.

> . . . We just terminated him due to our policy if you fail to personally notify [the] store director on duty of [the] absence, do not contact the store manager within 24 hours of your start of his shift, you will be regarded as having voluntarily quit your job. And that was what we terminated him on.

(R. Item No. 10, Referee's Hearing: Transcript of Testimony w/ Employer Exhibit, Dated 8/18/2016.) Friedrich stated that Employer's policy was contained in its Employee Handbook and that Claimant – like all employees – was given a copy of the policy and made aware of it.

The Referee found Claimant ineligible for benefits because he was terminated for willful misconduct, reasoning that "employer's policy provides that [a] no call, no show will be considered job abandonment and will result in the termination of employment. The claimant was aware of the policy. The claimant violated the policy and has not established adequate justification for his violation." (Referee's Decision/Order at 2.)

Claimant appealed to the Board, stating in his appeal notice that "I did call to explain I was being admitted to the hospital, I also called the H.R. Supervisor weekly to give update for release. I have verification of hospital stay [and] date of admittance[.] Work has known about my illness from the beginning." (R. at Item No. 12, Claimant's Petition for Appeal from the Referee's Decision/Order w/ Attachments, Dated 9/6/2016.)

The Board adopted and affirmed the Referee's determination. The Board also refused to consider any extra-record statements made in Claimant's appeal letter in reaching its decision. Claimant then filed this petition for review.[4]

On appeal, Claimant contends that the Board erred when refusing to consider any extra-record statements in his appeal letter. However, it is well settled that the Board cannot review evidence that was not submitted to the Referee unless it directs the taking of additional evidence. 34 Pa. Code § 101.106; *Umedman v. Unemployment Compensation Board of Review*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012). Because Claimant could have provided testimony at the Referee's hearing but did not because he again "no call, no showed," the Board did not err when refusing to take consideration of these extra-record statements.[5]

Claimant also contends that the Board erred when determining that his conduct and absence from work, in light of his alleged health problems and repeated communication with Employer, constituted willful misconduct.

---

[4] Our review of the Board's decision is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact were supported by substantial evidence. *Frazier v. Unemployment Compensation Board of Review*, 833 A.2d 1181, 1183 n.4 (Pa. Cmwlth. 2003). In unemployment compensation matters, "the Board is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses." *Owoc v. Unemployment Compensation Board of Review*, 809 A.2d 441, 443 (Pa. Cmwlth. 2002). "Findings made by the Board are conclusive and binding on appeal if the record, examined as a whole, contains substantial evidence to support the findings." *Id.*

[5] Similarly, Claimant offers reasons for why he failed to attend the Referee's hearing. However, "[t]his Court may not consider any evidence that is not part of the certified record on appeal." *Pennsylvania Turnpike Commission v. Unemployment Compensation Board of Review,* 991 A.2d 971, 974 (Pa. Cmwlth. 2009).

Although the Law does not define the term "willful misconduct," the courts have defined it as:

> (1) wanton or willful disregard for an employer's interests; (2) deliberate violation of an employer's rules; (3) a disregard for the standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). While absenteeism standing alone is grounds for discharge, it is not willful misconduct. *Lyons v. Unemployment Compensation Board of Review*, 533 A.2d 1144, 1145 (Pa. Cmwlth. 1987). Absenteeism can constitute willful misconduct if any of the following additional elements are present: (1) excessive absenteeism; (2) failure to notify the employer of the absence in advance; (3) lack of good or adequate cause for the absence; (4) disobedience of existing employer rules, regulations or policy regarding absenteeism; and (5) disregard of warnings regarding absenteeism. *Pettey v. Unemployment Compensation Board of Review*, 325 A.2d 642, 643 (Pa. Cmwlth. 1974).

Employer provided both evidence and testimony demonstrating that – contrary to his allegations – Claimant was incarcerated and not in the hospital when absent from work, and that Claimant did not make further calls to Employer after March 30, 2016, until well beyond the date of his discharge. Employer's uncontradicted testimony at the hearing also demonstrates that Claimant knew that

7

Employer's policy provides that a "no call, no show" will be considered job abandonment resulting in discharge. In light of Claimant's absence at the hearing and Employer's offered testimony and evidence, the Board did not err when determining that Claimant failed to establish adequate justification for his excessive absences and failed to notify Employer about these absences.

Accordingly, the Board's order is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philip J. Saurman,                          :
                    Petitioner              :
                                            :
            v.                              : No. 2025 C.D. 2016
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                    Respondent              :


# **O R D E R**


AND NOW, this 24<u>th</u> day of <u>May</u>, 2017, it is hereby ordered that the order of the Unemployment Compensation Board of Review dated October 11, 2016, is affirmed.


_____
DAN PELLEGRINI, Senior Judge